# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GARY LEE W.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 20-2610-JWL** |
| **KILOLO KIJAKAZI,**[2] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no reversible error in the Administrative Law Judge's (ALJ) step two evaluation or evaluation of the opinions of the workers compensation physicians, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

_____

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.     Background

Plaintiff protectively filed an application for DIB on May 2, 2019.  (R. 12, 199).
After exhausting administrative remedies before the Social Security Administration
(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision
pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in failing to consider all
his medically determinable impairments and the opinions of two physicians who treated
him for his workers compensation injury, Dr. O'Brien-Leighton and Dr. Ericksen.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052
(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he
findings of the Commissioner as to any fact, if supported by substantial evidence, shall be
conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual
findings are supported by substantial evidence in the record and whether he applied the
correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,
White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to
the weight, not the amount, of the evidence.  It requires more than a scintilla, but less
than a preponderance; it is "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see
also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).
Consequently, to overturn an agency's finding of fact the court "must find that the
evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-
Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

3

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses each error alleged in Plaintiff's Social Security Brief.

## II.   Step Two Evaluation

Plaintiff points out the only severe impairments found by the ALJ in this case are impairments of the lumbar spine and argues that he "was also limited as a result of cervical spine abnormalities, degeneration in his left shoulder joint, Scheuermann's kyphosis, a right ACL tear, a right meniscus tear, mild subchondral hip sclerosis, and a right ankle impairment" which were not accounted for—and in most cases not even considered—by the ALJ.  (Pl. Br. 14).  He argues his shoulder and cervical spine impairments limited his ability to reach, as was opined by Dr. Dobyns, Dr. O'Brien-Leighton, and Dr. Wesley.  Id. at 14-18.  He argues "Scheuermann's kyphosis can also

affect reaching," id. at 17, and "helps explain the source and degree of" his pain, tight muscles, and knot or swelling near his spine.  (Pl. Br. 18-20).  Finally, he argues his right knee, hip, and ankle impairments limit his ability to stand and walk.  Id. at 20-24.  In each instance, Plaintiff suggests the ALJ should have assessed RFC limitations similar to those opined by Dr. Wesley, whose opinion the ALJ found is not persuasive.  Id. 17, 20, 24; see also (R 18).

The Commissioner argues the ALJ's decision is supported by the record evidence and any failure to consider adequately the "smattering of impairments and limitations" to which Plaintiff appeals is not harmful error.  (Comm'r Br. 12).  She argues it is not error for an ALJ to fail to state all of a claimant's severe impairments "so long as the ALJ finds at least one other severe impairment."  Id. at 13 (citing Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016); Smith v. Colvin, 821 F.3d 1264, 1266-67 (10th Cir. 2016)).  She argues, contrary to Plaintiff's assertion otherwise, that the ALJ stated he had "considered and reviewed the entire record, all evidence, and all symptoms, and the Court [sic] should take him at his word."  Id. (citation omitted).  She argues

> By adopting the State [sic] agency doctors' prior administrative medical findings that were based on a comprehensive review of evidence from the relevant period, the ALJ adequately considered and accounted for limitations reasonably stemming from all of Plaintiff's conditions on this record.  This is so, even if the ALJ did not expressly designate some of Plaintiff's issues as medically determinable.

Id. a 13-14 (citing Ray v. Colvin, 657 F. App'x 733, 734 (10th Cir. 2016)).

The Commissioner argues that in suggesting greater RFC limitations Plaintiff is merely asking the court to reweigh the evidence or second guess the ALJ.  She concludes

that the record does not support limitations greater than those assessed by the ALJ in any case.  (Comm'r Br. 14-17).

In his Reply Brief, Plaintiff reiterates his earlier arguments and argues that the Commissioner's counter arguments are post hoc rationalizations for the ALJ's decision which do not excuse the ALJ's failure to discuss all Plaintiff's medically determinable impairments.

**A.      Step Two Standard**

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities.  Williams, 844 F.2d at 751.  However, he must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

In <u>Brescia v. Astrue</u>, 287 F. App'x 626, 628-629 (10th Cir. 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Later, in <u>Hill v. Astrue</u>, 289 F. App'x. 289, 291-92, (10th Cir. 2008), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining the claimant's RFC, considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

Moreover, while limitations attributed to impairments which are medically determinable but are not severe <u>must be</u> considered at later steps in the evaluation, alleged limitations attributable to impairments which are <u>not</u> medically determinable <u>must not be</u> considered at later steps.  20 C.F.R. § 404.1523; <u>see also</u>, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); <u>Gibbons v. Barnhart</u>, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted); 20 C.F.R. § 404.1529(b) (explaining that symptoms may <u>only</u> be considered when they reasonably result from a medically determinable impairment).

**B.**     <u>Analysis</u>

As Plaintiff points out, the regulations provide that "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521 (quoted at Pl. Br. 16). However, the next two sentences of the regulation explain, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. Thus, to the extent Plaintiff relies on his symptoms, the diagnoses of various physicians, or the opinions of physicians to demonstrate that conditions not discussed by the ALJ are medically determinable impairments (hereinafter MDI), his arguments fail. Moreover, Plaintiff's arguments miss the point that pain is a symptom, not an impairment, so his allegations of back pain, neck pain, shoulder pain, hip pain, knee pain, and ankle pain are symptoms, and while they may suggest a related impairment, by themselves they do not demonstrate the presence of a medically determinable impairment or impairments.

The court agrees with Plaintiff that there is objective medical evidence ("medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1)) tending to suggest that Plaintiff has additional MDIs affecting his musculoskeletal system in his cervical and thoracic spine; his left shoulder; and his right hip, knee, and ankle. However, as noted in the step two standard above, the mere presence of a condition does not establish limitations. Nevertheless, it is by no means clear that the ALJ determined the limitations,

if any, resulting from these MDIs and considered them in assessing Plaintiff's RFC or determined such limitations were subsumed within the RFC he assessed.  The Commissioner argues that any error was harmless because the ALJ found other impairments that are severe.  (Comm'r Br. 13) (citing Allman, 813 F.3d at 1330; Smith, 821 F.3d at 1266-67).  The Commissioner does not acknowledge that the regulations require the ALJ to consider any additional limitations resulting from the additional MDI.  Further, in the cases relied upon by the Commissioner, there was no question regarding an MDI, for each court recognized that the ALJ had considered the impairments at issue.  Allman, 813 F.3d at 1330 ("Mr. Allman concedes that the ALJ considered his headaches"); Smith, 821 F.3d at 1267 ("Though the administrative law judge did not mention a left shoulder impingement at step two, he apparently found impairments in both shoulders when assessing the residual functional capacity.  There, for example, the judge found a reduced range of motion in Ms. Smith's shoulder joints and limited her ability to lift and carry objects.  Ms. Smith does not say what else a left shoulder impingement would have prevented her from doing.")

Here, Plaintiff has clearly alleged MDI's which were not discussed and arguably not considered by the ALJ when assessing RFC.  Because the court cannot find this was not error, the remaining question for the court is whether any error was harmless.  The court finds it was.  The mere presence of error in the disability determination process does not require remand.  As noted above, it is a claimant's responsibility to show that he is unable to perform any substantial gainful activity, and as relevant here he has the

burden to show that he has limitations greater than those in the RFC assessed.  He has not met that burden as to this issue.

The problem with Plaintiff's argument is he does not point to record evidence which compels finding greater limitations than those assessed by the ALJ.  Plaintiff argues his shoulder and cervical spine problems "warranted limitations in" his ability to reach (Pl. Br. 17) and suggests he should have been limited to no more than frequent overhead reaching as opined by Dr. Wesley.  Id. at 18.  Plaintiff argues his Scheuermann's kyphosis provides an explanation for his allegations of pain—and supports his alleged need to recline and Dr. Wesley's opinion suggesting greater RFC limitations.  Id. at 18-20.  Finally, he argues his right hip, knee, and ankle impairments require standing and walking limitations similar to those Dr. Wesley opined—standing and walking less than two hours in a day, alternate sitting and standing/walking at will, and the opportunity to lie down at unpredictable intervals.  Id. at 24.

No evidence cited by Plaintiff compels greater limitations than assessed by the ALJ.  Plaintiff primarily appeals to medical opinions to support his suggestion of greater limitations.  As will be addressed more fully hereinafter, the opinions of Dr. O'Brien-Leighton and Dr. Erickson do not apply here.  Moreover, the ALJ found Dr. Wesley's opinion unpersuasive because it is inconsistent with the evidence and because it was propounded by Dr. Wesley after Plaintiff's date last insured.  Although Plaintiff primarily relies on Dr. Wesley's opinion to support his suggestion of greater limitations, he does not directly challenge the ALJ's persuasiveness finding and the court finds that it is supported by the record evidence.

Plaintiff points to objective medical evidence demonstrating such conditions as disc herniation and bulging, hypertrophic and degenerative changes, limited abduction (Pl. Br. 15), Scheuermann's kyphosis with anterior wedging of the T11, T12, and L1 vertebrae, id. at 19, ACL tear, meniscus tear, effusion, mild subchondral sclerosis of the hip, trochanteric tenderness, antalgic gait, tenderness and cavovarus foot deformity, and osteochondral defect of the medial talar dome.  Id. at 21-22.  None of the objective medical evidence cited states a functional limitation or the degree of such limitation, and Plaintiff points to no evidence beyond his testimony and the unpersuasive or inapplicable medical opinions to which he appeals to suggest greater limitations.  Further, he does not even state the specific functional limitations he believes the record supports.  Rather, he argues the ALJ should have stated the MDI's and stated the functional limitations they imposed or explained why they did not impose greater limitations.

Plaintiff spends considerable effort suggesting functional limitations which can or might be caused by the conditions referenced in the objective medical evidence cited, but he points to no record evidence demonstrating specific functional limitations caused by those conditions in this case.  Plaintiff appears to believe that the ALJ should have looked at the evidence he cites and made a medical determination that the limitations alleged by Plaintiff were caused by these conditions.  Having failed that, he asks the court to weigh that evidence and determine that the ALJ erred.  What Plaintiff's argument misses is that his date last insured was December 31, 2018, and the state agency medical consultants, Dr. Duff, and Dr. Korte, reviewed all objective medical evidence relevant to his condition before that date and relied upon by Plaintiff and determined Plaintiff had the RFC for a

wide range of light work.  (R. 97-99, 112-14).  The ALJ found these prior administrative

medical findings persuasive but found Plaintiff further limited to not climb ladders, ropes,

and scaffolds, and to alternate positions briefly at thirty-minute intervals or less

frequently.  Thus, despite Plaintiff's implying otherwise, the medical evidence has been

reviewed by qualified medical experts who found lesser limitations than did the ALJ.

Plaintiff has not met his burden to show evidence compelling greater limitations than

assessed by the ALJ and the court finds any error in failing to specifically discuss all

potential MDIs is harmless.

## III.    Medical Opinions of Dr. O'Brien-Leighton and Dr. Erickson

Plaintiff claims the ALJ erred in failing to explain how persuasive he found the

January 6, 2014 opinion of Dr. O'Brien-Leighton that Plaintiff should limit repetitive

bending/lifting, could not reach overhead and was limited to lifting fifteen pounds, and

the September 16, 2013 opinion of Dr. Erickson that Plaintiff is limited to lifting fifteen

pounds and had bending restrictions.  (Pl. Br. 24, 25) (citing R. 332, 488).  Arguing from

this court's earlier decisions, Plaintiff implies the court cannot tell how persuasive the

ALJ found the opinions without weighing the opinions in the first instance.  Id. at 26

(citing Stacey L. C. v. Saul, No. CV 20-1064-JWL, 2021 WL 147254, at *4 (D. Kan. Jan.

15, 2021) ("Were the court to find harmless the ALJ's failure to articulate how persuasive

he found the opinion, it would have to weigh the opinion in the first instance and

determine it is unpersuasive"); Taunya F. v. Saul, No. CV 19-1326-JWL, 2021 WL

38009, at *4 (D. Kan. Jan. 5, 2021) ("[T]he only way to determine what lesser weight

was, or should have been, accorded would be for the court to weigh the opinions in the

first instance, a task which it is forbidden under the substantial evidence standard of review."). The Commissioner argues any error was harmless because the opinions applied only during the time Plaintiff was being treated for his workers compensation injury and he was later released to return to work without restrictions. (Comm'r Br. 18).

The court agrees with the Commissioner. Contrary to this court's opinions cited above, the decision at issue here makes it clear how the ALJ considered these opinions. Although the ALJ did not mention either physician by name, he did explain his consideration of their opinions.

> [Plaintiff] was treated for a lumbar strain at work in August 2013 and was returned to work with a 15-pound restriction with no overhead reaching or repetitive bending/lifting (exhibit 1F/1 [, R. 316]). An October 2013 lumbar spine MRI showed evidence of disc degenerative changes at L1-2, L2-3, and L3-4, worse at L3-4, as well as anterior spurring and possible mild neural foraminal narrowing at L3-4. The record shows the claimant continued to work with these restrictions, while attending regular follow-up (exhibit 1F/13, 18 [, R. 328, 333]). The evidence of record shows the claimant was treated conservatively until September 11, 2014, when he was released to return to work without any limitations (exhibit 2F/2 [, R. 335)).

(R. 17). The ALJ's explanation makes it clear that the opinions at issue, made during the progress of treatment for Plaintiff's work injury, ended by their terms when Plaintiff was released to return to work without restrictions. Had the ALJ stated how persuasive he found those opinions, it would have confused the real issues in this case. Had he stated he found the opinions unpersuasive, it might be taken to imply he disagreed with the treatment of Plaintiff's work injury, which he clearly did not question. Had he stated he found the opinions persuasive that might have been used to imply greater limitations after September 11, 2014 than those the ALJ assessed. The court finds no error in the ALJ's

consideration of these two opinions which are really irrelevant to the question of disability after September 11, 2014 and do not show a twelve months duration after Plaintiff's alleged onset of disability on June 26, 2014.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 10, 2022, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**